UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

WILLIAM H. BAKER,

               Plaintiff,

          v.

THE PHOENIX INSURANCE
COMPANY,

               Defendant.

CASE NO. C12-1788JLR

ORDER DENYING MOTION
FOR SUMMARY JUDGMENT

Before the court is Defendant The Phoenix Insurance Company's ("Phoenix")

motion for summary judgment regarding equitable estoppel.  (Mot. (Dkt. # 25).)  In this

motion, Phoenix argues that an equitable estoppel argument made by Plaintiff William

Baker fails as a matter of law.  (*See* Mot.)  In a previous order, the court addressed this

argument, holding that there were triable issues of fact regarding whether equitable

estoppel applied in this case.  (3/5/13 Order (Dkt. # 23).)  Despite the court's previous

ruling, this argument has risen again—much like the mythical bird with which Defendant

ORDER- 1

1 shares its name.  For the second time, the court DENIES Phoenix's motion for summary

2 judgment, finding triable issues of fact regarding whether equitable estoppel applies and

3 ruling that Phoenix is not entitled to judgment as a matter of law.[1]

## I.   BACKGROUND

5      This is an insurance coverage dispute.  Mr. Baker was rear-ended on Interstate 90

6 by a motorist who did not have enough money or insurance to pay all of Mr. Baker's

7 medical bills.  (Compl. (Dkt. # 1-2) ¶¶ 4.1-4.3.)  Now, the two sides dispute whether Mr.

8 Baker is entitled to Uninsured-Underinsured Motorist coverage ("UIM") under a Phoenix

9 insurance policy covering Mr. Baker's truck.  Mr. Baker alleges breach of contract, bad

10 faith, and numerous other causes of action against Pheonix. (*Id.* ¶¶ 6.1-10.3.)  The parties

11 have not yet completed discovery, but Phoenix seeks early resolution of certain claims,

12 arguing that they can be decided as a matter of law.

13      Mr. Baker made a UIM claim with Phoenix after his car was struck by an

14 uninsured/underinsured[2] motorist named Sameer Mohamed.  (Compl. ¶¶ 4.1-4.3.)  Mr.

---

[1] Both sides have requested oral argument on this motion (*see* Dkt. ## 25, 32), but the court denies these requests.  Oral argument is not necessary where the non-moving party suffers no prejudice.  *Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984).  "When a party has [had] an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge* ).  "In other words, a district court can decide the issue without oral argument if the parties can submit their papers to the court."  *Id.*  Here, the issues have been thoroughly briefed by the parties and oral argument would not be of assistance to the court.  Accordingly, the court denies the parties' requests for oral argument.

[2] The Complaint does not make clear whether Mr. Mohamed was underinsured or uninsured, describing him as "underinsured and possibly uninsured," and

1    Mohamed's car hit Mr. Baker's 1993 Dodge truck from behind, pushing it into the car

2    directly ahead of Mr. Baker.  (*Id.* ¶¶ 4.3-4.5.)  The parties do not dispute that Mr.

3    Mohamed was the sole cause of the accident.  Meanwhile, Mr. Baker's truck was

4    registered in Mr. Baker's name, but it was not insured in his name.  (Shoemaker Decl.

5    (Dkt. # 15-4) Ex. D at 3, 7.)  Instead, the truck was insured in the name of Bibb

6    Construction LLC ("Bibb"), a company owned by Mr. Baker's adult son.  (*Id* at 7; *Id.* Ex.

7    A.)

8         Phoenix denied Mr. Baker's UIM claim, informing him that he had no UIM

9    coverage under Bibb's policy.  (*Id.* Ex. F.)  Phoenix informed Mr. Baker that, although

10   Bibb's policy included $1,000,000.00 of UIM coverage, this coverage only applied to

11   automobiles owned by Bibb.  (*Id.*)  Phoenix told Mr. Baker that since he, not Bibb,

12   owned the 1993 Dodge, it was not covered by Bibb's policy.  (*Id.*)  Accordingly, Phoenix

13   denied Mr. Baker's UIM claim entirely.  (*Id.*)

14        However, as the court stated in its previous order, this issue is not as simple as

15   Phoenix makes it out to be.  It is true that Bibb's policy originally provided UIM

16   coverage only for autos owned by Bibb.  (*See id.*)  However, before the accident, Mr.

17   Baker's son contacted his insurance agent to add the 1993 Dodge to the policy.  (Baker

18   Decl. (Dkt. # 19-1) ¶¶ 4-5.)  Phoenix agreed to add the Dodge and issued an endorsement

19   to the policy that named the Dodge as an insured auto.  (*See* Shoemaker Decl. Ex. B.)

20   The endorsement stated that the 1993 Dodge was covered for UIM benefits (among other

21

22   "underinsured/uninsured."  (Compl. ¶¶ 4.3, 4.5.)  For purposes of this motion, it is irrelevant
     whether Mr. Mohamed was underinsured or uninsured.

ORDER- 3

1    coverages) and that Phoenix would collect a premium for UIM coverage. (*Id.* at 6.)

2    Phoenix did collect this premium. (Baker Decl. ¶ 6.)

3        Just over three months ago, the court considered all of these facts and ruled that

4    Phoenix might be equitably estopped from denying Mr. Baker UIM coverage. (3/5/13

5    Order at 5-7.) Specifically, the court held that estoppel may apply because Phoenix's

6    endorsement represents a "statement or act inconsistent with Phoenix's claim that Mr.

7    Baker has no UIM coverage." (*Id.* at 6.) The court further held that "Mr. Baker

8    demonstrates that there is a genuine dispute of material fact even considering the 'clear,

9    cogent, and convincing evidence' standard required for equitable estoppel." (*Id.* at 7.)

10   Notwithstanding this ruling, Phoenix now moves for summary judgment, arguing that it

11   is entitled to summary judgment on the question of equitable estoppel.

12                              **II.    ANALYSIS**

13       Phoenix makes several contentions in this new motion. First, Phoenix argues that

14   equitable estoppel is not available to Mr. Baker because Mr. Baker did not plead estoppel

15   in his Complaint. Second, and most fundamentally, Phoenix argues that, under

16   Washington insurance law, equitable estoppel cannot apply to this case. Finally, Phoenix

17   re-raises its previously-made argument that the evidence in this case does not support a

18   claim for equitable estoppel. In response, Mr. Baker moves to strike Phoenix's motion as

19   repetitive. (Resp. (Dkt. # 32) at 2.) Mr. Baker also responds to the merits of Phoenix's

20   motion "[i]n an abundance of caution." (*Id.* at 1.)

21

22

**A.      Summary Judgment Standard**

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007).  The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets his or her burden, the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial."  *Galen*, 477 F.3d at 658.  The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B.      Motion to Strike**

As an initial matter, Mr. Baker moves to strike Phoenix's motion entirely, arguing that it simply repeats Phoenix's previous motion and is in fact an untimely motion for reconsideration.  (Resp. at 2.)  The court agrees in part.  Generally, whether to allow successive motions for summary judgment is within the discretion of the trial court.  *Hoffman v. Tonnemacher*, 593 F.3d 908, 911 (9th Cir. 2010).  The Ninth Circuit has recognized that allowing successive motions can be "logical," and that it can foster the "'just, speedy, and inexpensive' resolution of suits."  *Id.*  However, the Ninth Circuit has also recognized that successive summary judgment motions present the potential for

1  abuse.  *Id.*  Thus, district courts retains discretion "to weed out frivolous or simply

2  repetitive motions."  *Id.*

3      The court, in its discretion, finds it logical to consider some (but not all) of the

4  arguments in Phoenix's motion.  Most of Phoenix's arguments are substantively new, and

5  considering them will help foster a just, speedy, and inexpensive resolution of this case.

6  *See id.*  However, one of Phoenix's arguments is just a repeat of an argument made in

7  Phoenix's last motion:  the argument that there is not enough evidence to support an

8  equitable estoppel theory.  (*Compare* Mot. at 8-13 *with* Reply in Support of MSJ (Dkt.

9  # 21) at 10-12.)  More importantly, the court has already ruled against Phoenix on this

10  issue.  (3/5/13 Order at 5-7) (holding that there are genuine issues of material fact with

11  respect to equitable estoppel).  Phoenix, by raising this argument for the second time, is

12  attempting to re-argue the court's ruling.  Thus, this argument is in actuality an untimely

13  motion for reconsideration.  (*See* Local Rules W.D. Wash. 7(h)(2) (A motion for

14  reconsideration "shall be filed within fourteen days after the order to which it relates is

15  filed.").)  This portion of Phoenix's argument is "frivolous or simply repetitive," *see*

16  *Hoffman*, 593 F.3d at 911, so the court GRANTS Mr. Baker's motion to strike this

17  argument.

18  **C.    Failure to Plead Estoppel**

19      Next, the court turns to Phoenix's first argument.  Phoenix argues (in one

20  paragraph, and citing no authority) that Mr. Baker is precluded from arguing equitable

21  estoppel because he did not plead it in his Complaint or in his Answer to Phoenix's

22  counterclaims.  (Mot.)  This argument is not well-taken.  First, it is widely accepted that

ORDER- 6

1    under the Federal Rules of Civil Procedure, a plaintiff need not allege in the complaint

2    the precise legal theory on which recovery is sought as long as the other side receives fair

3    notice of the nature of the claim.  *Crull v. GEM Ins. Co.*, 58 F.3d 1386, 1391 (9th Cir.

4    1995) (holding that Rule 8 pleading standard can be met even where the plaintiff

5    misconceives the proper legal theory).  Federal courts do not employ strict pleading

6    standards requiring the Plaintiff to plead every possible theory of recovery in the

7    complaint.  For example, in *Fanucchi & Limi Farms v. United Agri Prods.*, 414 F.3d

8    1075, 1082 (9th Cir. 2005), the Ninth Circuit allowed a complaint for breach of contract

9    to proceed on a novation theory even though that theory had not been pleaded.  As the

10   Ninth Circuit reasoned in that case, notice pleading is all that is required in federal

11   court—it is not fatal to a plaintiff's case that it does not plead the precise legal theory that

12   ultimately allows the case to proceed.  *Id.*

13          This same reasoning applies here.  Under the federal rules, there is no requirement

14   that Mr. Baker plead the specific legal theory under which he will recover.  *See id.*  It is

15   sufficient that Phoenix receive fair notice of the nature of the claim against it.  *Crull*, 58

16   F.3d at 1391.  That standard is met in this case, and accordingly the court rejects

17   Phoenix's argument that failure to plead estoppel in the complaint is fatal.  Phoenix also

18   argues that Mr. Baker waived his estoppel argument by failing to plead it in response to

19   Phoenix's counterclaims.  Phoenix is correct that a plaintiff waives affirmative defenses

20   not raised in the first responsive pleading.  *Morrison v. Mahoney*, 399 F.3d 1042, 1046-

21   47 (9th Cir. 2005).  Here, however, Mr. Baker did raise estoppel in his first responsive

22

ORDER- 7

pleading.[3]  (*See* Resp. to Counterclaims (Dkt. # 31) ¶ 2.10.)  Thus, the court rejects Phoenix's waiver arguments.

**D.    Whether Equitable Estoppel is Available in this Case under Washington Insurance Law**

Phoenix next argues that Washington insurance law precludes applying the doctrine of equitable estoppel in this case.  Equitable estoppel is a doctrine that operates to prevent a party from asserting a right where it has in the past made statements or assertions to the contrary that would make it inequitable to now assert that right.  *L.L. Buchanan v. Switzerland Gen. Ins. Co.*, 455 P.2d 344, 349 (Wash. 1969).  The elements of equitable estoppel are:  (1) an admission, statement, or act inconsistent with the claim afterwards asserted; (2) action by the other party on the faith of such admission, statement, or act; and (3) injury to such other party resulting from allowing the first party to contradict or repudiate such admission, statement, or act.  *Dombrowsky v. Farmers Ins. Co. of Wash.*, 928 P.2d 1127, 1134 (Wash. Ct. App. 1996) (citing *McDaniels v. Carlson*, 738 P.2d 254 (Wash. 1987)).  In this case, Mr. Baker seeks to apply equitable estoppel to preclude Phoenix from denying him UIM coverage where, in an endorsement, Phoenix specifically told him he was covered.  (*See* Resp.)  On the other hand, Phoenix argues

---

[3] Mr. Baker did not file his response to Phoenix's counterclaims until after this motion for summary judgment was filed and nearly seven months after Phoenix first raised its counterclaims.  (*Compare* Am. Ans. (Dkt. # 7) *with* Resp. to Counterclaims (Dkt. # 31).)  However, Phoenix never moved for default or filed any motion challenging Mr. Baker's failure to answer its counterclaims in a timely fashion.  The court therefore accepts Mr. Baker's unchallenged response to Phoenix's counterclaims and finds it sufficient to preserve the affirmative defense of estoppel.

1    that equitable estoppel does not apply because it cannot be used to create coverage where

2    coverage would not otherwise exist under the policy.  (*See* Mot. at 5-8.)

3         As a general matter, equitable estoppel can apply in the insurance context.  *See,*

4    *e.g.*, *Saunders v. Lloyd's of London*, 779 P.2d 249 (Wash. 1989).  Over the years,

5    numerous Washington courts have applied equitable estoppel to insurance contracts

6    without controversy.  *See, e.g.*, *id.*; *Dombrowsky*, 928 P.2d at 1134.  Indeed, Phoenix

7    does not dispute that an insurer can be estopped from denying coverage where the

8    elements of equitable estoppel are met.

9         There is one caveat to this general rule under Washington law, however, which is

10   that equitable estoppel cannot be used to create insurance coverage where it would not

11   otherwise exist.  *Shows v. Pemberton*, 868 P.2d 164, 166 (Wash. Ct. App. 1994).  If there

12   is no coverage under the terms of an insurance contract, the insured cannot rely on

13   contrary statements by the insurer to "create" coverage by estoppel contrary to the terms

14   of the policy.  *See id.*; *Diaz v. Nat'l Car Rental Sys., Inc.*, 977 P.2d 1258, 1260-61 (Wash.

15   Ct. App. 1999).  For example, an insured cannot use equitable estoppel to override a clear

16   exclusion in the policy simply because the insurer promised "full coverage."  *Shows*, 868

17   P.2d at 166; *Diaz*, 977 P.2d at 1260-61.  This rule dates back to at least 1937, when the

18   Washington State Supreme Court first stated in *Carew, Shaw & Bernasconi, Inc. v.*

19   *General Casualty Co. of America* that "while an insurer may be estopped, by its

20   conduct . . . from insisting upon a forfeiture of a policy, . . . under no conditions can the

21   coverage or restrictions on the coverage be extended by the doctrine of waiver or

22   estoppel."  65 P.2d 689, 692 (Wash. 1994).

1       Importantly, the rationale underlying this *Carew* rule is that an insurer should not

2 be required to pay for a loss for which it received no premium. *Saunders*, 779 P.2d at

3 252; *Shows*, 868 P.2d at 166; *Estate of Hall v. HAPO Fed. Credit Union*, 869 P.2d 116,

4 119 (Wash. Ct. App. 1994). As a direct corollary, the rationale for the *Carew* rule does

5 not hold and the rule does not apply if the insurer accepts a premium to insure the

6 claimed loss. *Saunders*, 779 P.2d at 252. "[I]f an insurer accepts premium

7 payments . . . for which no coverage is provided, the general rule [stated in *Carew*] is

8 inapplicable." *Estate of Hall*, 869 P.2d at 119.

9       Given all of this, there are two reasons why the *Carew* rule does not apply in this

10 case and, accordingly, why Mr. Baker is permitted to assert equitable estoppel. First,

11 Phoenix accepted a premium for the disputed UIM coverage on Mr. Baker's truck.

12 (Baker Decl. ¶ 6.) Phoenix agreed to insure Mr. Baker's 1993 Dodge and issued an

13 endorsement to the policy that named the truck as an insured auto. (*See* Shoemaker Decl.

14 Ex. B.) The endorsement showed that the 1993 Dodge was covered for UIM benefits

15 (among other coverages) and that Phoenix would collect a premium for UIM coverage.

16 (*Id.* at 6.) Phoenix did collect this premium. (Baker Decl. ¶ 6.) This fact undermines the

17 rationale of the *Carew* rule, making it inapplicable and allowing Mr. Baker to assert

18 equitable estoppel. *See Saunders*, 779 P.2d at 252; *Estate of Hall*, 869 P.2d at 119.

19       Second, and more importantly, this is not a situation where the court would be

20 creating coverage by estoppel. Coverage, if it exists, would come from the policy.

21 Phoenix issued an endorsement naming Mr. Baker's 1993 Dodge as a covered

22 automobile. (*See* Shoemaker Decl. Ex. B at 6.) If there is coverage, this is where it will

1   come from.  (*See id.*)  Granted, other parts of the policy suggest there is no coverage.

2   (*See id.* Ex. F.)  This is where estoppel comes in if a jury finds that it applies—to

3   preclude Phoenix from offering the other parts of the policy as an explanation or defense

4   that, in fairness, Phoenix ought not be allowed to assert.  *See Shows*, 868 P.2d at 166.

5   This case is different from, for example, a case where the policy clearly denies coverage

6   and the insured attempts to assert an external statement regarding "full coverage" as a

7   basis for estoppel.  *See id.*; *Diaz*, 977 P.2d at 1260-61.

8          For these two reasons, the court rejects Phoenix's argument that equitable estoppel

9   does not apply here as a matter of Washington insurance law.  As the court previously

10  held, Mr. Baker may attempt to assert equitable estoppel.  (*See* 3/5/13 Order at 5-7.)

11         In connection with this issue, the court notes that throughout its briefing, Phoenix

12  mischaracterizes the court's previous order.  Phoenix suggests that the court previously

13  held there was no coverage under Mr. Baker's insurance policy.  For example, in the

14  introduction to its motion, Phoenix states that "[t]his Court held that pursuant to the

15  policy as drafted, Plaintiff is not entitled to coverage . . . ."  (Mot. at 2.)  Phoenix also

16  states that "[t]his Court has held that there is no coverage available to the Plaintiff" (*id.*),

17  and that "[t]his court has already ruled on the coverage issues in this matter finding as a

18  matter of law that there is no coverage available under the policy."  (Reply at 1.)  This is

19  categorically not what the court held in its previous order, and there can be no mistaking

20  this fact.  The court's order concluded that "[u]nder the original policy, Mr. Baker had no

21  UIM coverage," elaborating that "under the terms of the original policy (not including the

22  endorsement), Mr. Baker has no UIM coverage."  (3/5/13 Order at 4.)  But the court went

1   on to say that if the original policy (excluding the endorsement) "were the end of the

2   story, Phoenix would be entitled to summary judgment." The original policy was not the

3   end of the story. The court went on to discuss the endorsement that was made a part of

4   the policy. (*See id.* at 4-7.) It would not be appropriate for the court to ignore the

5   endorsement in its analysis because, in fact, the endorsement is part of the policy. RCW

6   48.18.520 ("Every insurance contract shall be construed according to the entirety of its

7   terms and conditions as set forth in the policy, and as amplified, extended, or modified by

8   any rider, endorsement, or application attached to and made a part of the policy."). The

9   court was very clear in explaining this reasoning. (*See, e.g.*, 3/5/13 Order at 3.)

10   Phoenix's mischaracterizations represent either a gross misreading of the court's prior

11   order or a recklessly or intentionally deceptive misstatement of the court's ruling on an

12   issue that is critical to this motion. Either way, the court does not approve of this

13   conduct.[4] Further conduct of this character, and of the kind described in note 4, will

14

15   _____

16       [4] This is not the only instance of possible misconduct in Phoenix's briefing. It appears
     that Phoenix's reply brief may have been formatted to avoid the page limitations found in the

17   court's local rules. The court's local rules prohibit summary judgment reply briefs from
     exceeding twelve pages. Local Rules W.D. Wash. LCR 7(e)(3). That requirement is met here—
     Phoenix's reply brief is exactly 12 pages. However, the local rules also require briefing to be

18   printed using 12 point font or larger and double spacing. Local Rules W.D. Wash. LCR
     10(e)(1). Phoenix's reply brief uses 11 point font and 1.5 spacing. (*See* Reply.) According to

19   the court's calculations, Phoenix's reply brief would be roughly 18 pages long if it were
     formatted according to the local rules. Thus, the court is left to conclude that this formatting

20   may have been an attempt to avoid the 12 page limit for reply briefs. After all, Phoenix was able
     to follow the formatting requirements in its motion brief and in all other filings it has made in

21   connection with this case. (*See* Mot.; *see also, e.g.*, Mot. for Partial Summary Judgment (Dkt.
     # 14).) Accordingly, the court strikes the portion of Phoenix's brief that exceeds the page

22   limitations. This is everything after page 8. This does not affect the result of this motion,
     because those pages address issues that the court does not reach. (*See* Reply at 9-12.)

1   result in sanctions potentially including revoking counsel's permission to practice in

2   Federal Court.

3   **E.     Mr. Baker's Additional Arguments for Coverage**

4           In his response to Phoenix's motion, Mr. Baker makes several coverage arguments

5   that are not responsive to Phoenix's motion.  (*See* Resp. at 7-12.)  He argues that

6   coverage should be granted based on contractual ambiguity and under the authority of

7   RCW 48.22.030.  (*See id.*)  The court does not need to reach these arguments.  Phoenix

8   moves to strike these arguments as nonresponsive.  The court GRANTS this motion.  Mr.

9   Baker's additional arguments are not germane to this motion and would be properly

10  heard not here but in a separate motion for summary judgment.  In a separate motion, the

11  court would have the benefit of a complete record and adequate briefing before deciding

12  these important issues.  Mr. Baker will not be unfairly prejudiced by this ruling because

13  the deadline for dispositive motions in this case is still more than five months away.  (*See*

14  Sched. Order (Dkt. # 13).)

15                          **III.     CONCLUSION**

16          For the foregoing reasons, the court DENIES Phoenix's motion for summary

17  judgment (Dkt. # 25).

18          Dated this 24th day of June, 2013.

19

20                                          _____

21                                          JAMES L. ROBART
                                            United States District Judge
22

ORDER- 13